#### IN THE

## SUPERIOR COURT OF JUDICATURE,

#### FOR THE

## COUNTY OF HILLSBOROUGH, DECEMBER TERM,

#### A. D. 1836.

---

## J. B. BOWMAN *vs.* D. FARMER.

In a description of land in a deed of conveyance, a fixed monument will control both course and distance.

In a deed of conveyance one of the lines was described thus: " *Beginning at the mouth of Black brook, on the south side of the brook, and running from thence up said brook due west until it strikes the common land.*" The brook was very crooked, running sometimes on one side and sometimes on the other side of a due west line. It was *held*, that the brook was not designated as a monument, with sufficient certainty to control the point of compass.

THIS was a writ of entry, brought to recover a tract of land in Goffstown, and was tried upon the general issue at September term, 1836.

It appeared that the parties were the owners of two adjoining lots; each of which was bounded east by Merrimack river; and the lot of the demandant lay southerly of the lot owned by the tenant.

It farther appeared, that the tenant, being the owner of both lots, on the 8th October, 1823, by deed conveyed the southerly lot to Thomas Pollard, under whom the demandant claims that lot. The dividing line between those lots is thus described in that deed: " Beginning at the mouth of 'Black brook, on the south side of the brook, and running 'from thence up said brook due west until it strikes the line 'of the common land."

The deed contained a reservation, in the following words: " Reserving one half the privilege of using and occupying 'said Black brook, for the purpose of rafting or otherwise, 'which privilege is to be owned and occupied in common 'betwixt the parties respectively."

Black brook is a stream running easterly into Merrimack river, in a very winding course, sometimes on the one side of a line drawn due west from the mouth of the brook, and sometimes on the other side, and runs a few rods south of the place where that line strikes the common land.

The land demanded in the writ in this case is a tract bounded northerly by the brook and southerly by the said line ; and the question was, whether the brook or a line drawn due west from the south side of the mouth of the brook was the true dividing line between the lots.

A verdict was taken for the demandant, by consent, subject to the opinion of the court upon the foregoing case.

*C. H. Atherton*, for the demandant.

*Steele* and *Farley*, for the tenant.

RICHARDSON, C. J., delivered the opinion of the court.

It is a well settled general rule, that in a description of land in a deed of conveyance, what is most material and certain shall control that which is less material and uncertain. Thus a river, a known stream, a spring, or a marked tree, when declared to be a boundary in a deed, will control both course and distance. 9 *Cranch* 178 ; 7 *Cowen* 723, *Jackson* vs. *Wedger* ; 1 *do.* 605, *Jackson* vs. *Camp* ; 7 *Wheaton* 10, *Newton* vs. *Prior* ; 6 *do.* 582, *Preston* vs. *Bowman.*

And if in the deed of the tenant in this case a reference had been made to Black brook, as a boundary between the two tracts, it is very clear that the brook must have prevailed against the point of compass stated in the deed.

But the terms, *"running from thence up said brook,"* do

not necessarily imply that the line is to run *on* or *by* the brook. They may just as well mean that it is to run in a course corresponding with the general course or direction of the brook between the common land and the river, which is very nearly east and west. And if the intention had been to make the brook the boundary, it would naturally have been stated that the line was to run *on* or *by* the brook.

We are, therefore, of opinion that the brook is not designated in the deed as a boundary with sufficient certainty to control the point of compass, which is expressly stated to be due west.

The verdict is, therefore, set aside, and

*A new trial granted.*