## KNOWLES' PETITION.

In a petition for laying out a new highway, if the route is described as commencing at a known monument, it will be sufficient, though the distance of the monument from other known points be misstated.

It is not necessary in an award of damages, that the road commissioners should direct by whom the damages are to be paid.

If a petitioner for a road agree with the selectmen to withdraw their opposition, the report of the road commissioners in his favor, will be set aside.

PETITION, for a highway in the town of Northfield, representing that the selectmen, although duly petitioned therefor, had neglected and refused to lay out the same.

The description of the road prayed for, as set forth in the petition, was in these words, " Beginning on the west side of lot No. 55, in said town, at a stake and stones, fifty-five rods from the north corner of said lot, thence running north-westerly about eighty-four rods, to a stake and stones on the highway, leading over Bayhill road, so called, in said Northfield."

The description of the road, laid out by the commissioners, was as follows : " Beginning at a stake and stones, standing on the westerly line of lot No. 55, in said Northfield, being the southern terminus named in said petition, thence north 38 degrees west, ninety rods to a stake and stones, standing on the south side of Bayhill road, so called, in said town, being the northern terminus of the route named in said petition."

It appeared, that the terminus first named in the petition was the southern terminus, and the last named the northern.

The report further showed, that the road was laid out as a highway, through the land of Nancy Clough alone, for the accommodation of the petitioner. In making an award of damages, the commissioners state, that " they award to the owners of land, through which said highway is laid out, for land and damages, the following sum — to widow Nancy Clough, three hundred and twenty-five dollars."

The acceptance of the report was objected to by said land owner: " First, because the road commissioners had not laid out the road prayed for in the petition, but an entirely different one, with different termini." In support of this exception, they offered

evidence, from which it appeared, that the north corner of lot No. 55, was a well-known and established point; that the stake and stones on the westerly side of lot No. 55, where the commissioners commenced their laying out, and put down their monuments, were thirty-four rods from said north corner and no more. It appeared, also, that there was a stake and stones at this point, when the petition was presented, and when the commissioners examined the route, and laid out the road, but none at any time at the point fifty-five rods from the north corner of the lot.

The acceptance of the report was objected to, secondly, because, in the award of damages, it was not directed by whom they should be paid.

The acceptance of the report was further objected to, on the alleged ground, that a bargain had been made between the petitioner and the selectmen of the town, by which it was agreed, that if the selectmen would not oppose the laying out of the road, he would indemnify the town against the damages and costs that might arise therefrom. It appeared in evidence, that, prior to the hearing, the petitioner stated to the selectmen, that if they would not oppose the laying out said highway, he would indemnify the town against all damages and costs : and the selectment declining to take his word for that purpose; a bond was given by the counsel for the petitioner, binding himself to that effect.

At the hearing before the commissioners the exception was taken by the counsel for Nancy Clough, that such an agreement existed, and therefore the bond was given up; but the petitioner stated, that he had agreed to indemnify the town, and should stand by his agreement. In relation to this matter, all the commissioners testify, that, in arriving at the conclusion that the accommodation of the petitioner required the laying out of the highway, their minds were not affected by the consideration of any bargain, that might or might not exist between the petitioner and the selectmen of the town.

*Nesmith & Pike*, for the petitioner.

*Cate & Rogers*, for Clough.

BELL, J. The south terminus is well enough described in the petition. It appears there was a stake and stones on the west line of lot No. 55, thirty-four rods from the north-west corner. There was none at fifty-five rods from that corner, as set forth in the petition. This stake and stones was the terminus described and intended in the petition, as the commissioners report. The mistake in the distance is immaterial. If part of the description is incorrect, that part may be rejected, if there remain other more certain means to fix the point intended. A fixed monument, as the stake and stones in this case, controls both distances and courses. *White* v. *Gay*, 9 N. H. Rep. 116; *Bowman* v. *Farmer*, 8 N. H. Rep. 402.

The Revised Statutes, chap. 52, § 7, provide, that " the damages assessed upon the laying out of any highway for the accommodation of individuals, shall be paid by them," and this road being laid out for the accommodation of the petitioner, it was unnecessary for the commissioners to designate in their report the person by whom the damages should be paid. The agreement to indemnify the town was clearly covinous and collusive. It was the duty of the selectmen to resist the laying out of the road, if the public good would not be promoted by it. Public highways, (and this road, though laid out for the accommodation of the petitioner, is still a public highway,) not only impose upon the towns the duty of constructing the road at first, but that of maintaining them, perhaps forever. The selectmen of towns are not justified as public officers in withdrawing their opposition, by any arrangement which is limited to relieving the town from the present expense. They are bound to resist them, on account of the permanent future burden they impose on the town, unless they are required by a just regard to the public good. The effect this improper agreement was designed to have, was to induce the town officers not to do their duty. If they have been quiescent in consequence, the object has been effected. The refusal to lay out this road by the selectmen, when the application was made to them, sufficiently shows what was their view of their own duty in this respect.

It can make no difference, that the commissioners believe their

minds were not affected by any consideration of this agreement. It is out of their power to say what effect would have been produced on their judgment by a fair and faithful representation of the objections to this road, which the public interest required should be made.

*The report must be rejected.*