Don HANKS, Appellant,

v.

NCNB TEXAS NATIONAL
BANK, Appellee.

No. 11–90–210–CV.

Court of Appeals of Texas,
Eastland.

July 11, 1991.

David L. Hooper, David L. Hooper &
Associates, Abilene, for appellant.

Charles L. Black, Wagstaff, Harrell, Alvis, Stubbeman, Seamster & Longacre, Abilene, for appellee.

## OPINION

McCLOUD, Chief Justice.

This is an appeal from a summary judgment rendered in favor of NCNB Texas National Bank against a guarantor of payment on two promissory notes. We affirm.

On December 10, 1987, Elm Creek Development, Inc., through its President and sole shareholder Don Hanks, executed two promissory notes. NCNB Texas National Bank is the holder of the notes. The notes

were secured by two guaranty agreements, one signed by Hanks and the second by Don Wages. The identical agreements provided for an absolute, unconditional, joint and several, continuing guaranty of payment of an unlimited amount. The last payment made on the notes was in August 1988. In October 1988, Hanks, as guarantor, delivered to NCNB a letter requesting that NCNB "forthwith sue" the maker on the indebtedness pursuant to TEX.BUS. & COM.CODE ANN. § 34.02 (Vernon 1987). The notes matured in December 1988. At that time NCNB made demand upon Elm Creek, Hanks, and Wages for payment of amounts due. No payment was made, and NCNB filed suit against Elm Creek, Hanks, and Wages on March 7, 1989.

NCNB filed a motion for summary judgment. Thereafter, Wages died in October 1989. The court granted a partial summary judgment against Elm Creek and Hanks as to liability and set a trial for the remaining fact question of reasonable attorney's fees. On the date of trial, Elm Creek filed bankruptcy. The claim against Elm Creek was severed and placed under a separate cause number. The court entered judgment against Hanks for the amounts established by summary judgment proof and for the attorney's fees found by the jury. The court then severed the judgment against Hanks into a separate cause number and declared the judgment against Hanks final.

■ In the first point of error, Hanks contends that the trial court erred in granting summary judgment against him. Hanks argues that he gave statutory notice to NCNB under Section 34.02 to proceed against the maker of the notes he guaranteed and that NCNB failed to do so within a reasonable time, resulting in Hanks being discharged from all liability.

Section 34.02 provides in pertinent part that a surety (which includes guarantors) may require by written notice that the obligee forthwith sue on a contract on which a right of action has accrued. A surety who gives such notice is discharged from all liability on the contract if the obligee either fails to sue on the contract during the first

term of court after receiving the notice or fails to prosecute the suit to judgment and execution.

The guaranty agreement provides in pertinent part:

8. In the event of default by Borrower in payment of the Guaranteed Indebtedness, or any part thereof, when such indebtedness becomes due ..., Guarantor shall, on demand ... pay the amount due thereon to Bank, ... and it shall not be necessary for Bank, in order to enforce such payment by Guarantor, first, to institute suit or exhaust its remedies against Borrower or others liable on such indebtedness.

This type of waiver provision in guaranty agreements has been held to be valid and enforceable. See *Goff v. Southmost Savings & Loan Association,* 758 S.W.2d 822 (Tex.App.—Corpus Christi 1988, writ den'd); *Hernandez v. Bexar County National Bank of San Antonio,* 710 S.W.2d 684 (Tex.App.—Corpus Christi 1986), *writ ref'd n.r.e.,* 716 S.W.2d 938 (Tex.1986). We hold that Hanks waived his rights under Section 34.02 to require NCNB to sue Elm Creek or be discharged from liability. See *Jack M. Finley, Inc. v. Longview Bank & Trust Company,* 705 S.W.2d 206, 211 (Tex.App.—Texarkana 1985, writ ref'd n.r.e.). The first point of error is overruled.

■ In the second point of error, Hanks argues that the trial court abused its discretion by severing Hanks, resulting in a severance of guarantors of the notes sued upon. In the fourth point of error, Hanks argues that the trial court erred in granting summary judgment because NCNB discharged Hanks from all liability when it failed to revive its action against the estate and/or heirs of Wages in a reasonable time after Wages' death. We disagree. Hanks' liability as a guarantor is not dependent upon any requirement that NCNB jointly proceed against Wages or Wages' estate. Hanks' guaranty provides in part:

12. Guarantor agrees that Bank, in its discretion, may (i) bring suit against all Guarantors jointly and severally or against any one or more of them, (ii) compound or settle with any one or more

of Guarantors for such consideration as the Bank may deem proper, and (iii) release one or more of Guarantors from liability hereunder, and that no such action shall impair the rights of Bank to collect the Guaranteed Indebtedness (or the unpaid balance thereof) from other Guarantors, or any of them, not so sued, settled with or released.

Hanks waived any right to be jointly tried with other guarantors. We find that the trial court did not abuse its discretion in severing the claim against Hanks from the remaining claim based on a separate guaranty by a deceased guarantor. The second and fourth points of error are overruled.

■ In the third point of error, Hanks contends that the trial court erred in granting summary judgment because NCNB's summary judgment evidence was insufficient and fatally defective. The evidence includes the affidavit of John W. Clark, a senior vice president and commercial loan officer of NCNB. Clark's affidavit identifies the notes and guaranty agreements which are attached to and incorporated therein; states that the copies of the notes and guaranties are true and genuine copies; recites the principal balances and accrued interest due; and states that NCNB is the legal holder and owner of the notes and the guaranties and is the sole party to enforce same.

Hanks contends that Clark's statements in his affidavit are legal conclusions. He further argues that the affidavit fails to establish a predicate or foundation to review and understand the notes and guaranties and fails to qualify Clark as an "expert" capable of giving opinions regarding the notes and guaranties discussed in his affidavit. Hanks also objects to Clark's affidavit on the basis that it fails to comply with TEX.R.CIV.EVID. 803(6) and 902(10), which involve the business record hearsay exception, because Clark was not a custodian of the records and did not testify to personal knowledge of the preparation of the records.

■ Clark's statements concerning execution and delivery of the notes and guaranties, true and genuine copies of which were attached to and incorporated in the affidavit, and concerning NCNB's being holder of the documents and the amount of accrued interest due are statements of fact not expressions of opinion. Also, such statements in the summary judgment affidavit are not conclusory and can support the summary judgment. *Sparks v. Cameron Employees Credit Union*, 678 S.W.2d 600 (Tex.App.—Houston [14th Dist.] 1984, no writ); *Ecurie Cerveza Racing Team, Inc. v. Texas Commerce Bank–Southeast*, 633 S.W.2d 574 (Tex.App.—Houston [14th Dist.] 1982, no writ). The notes and guaranties were admissible as operative facts and the basis of NCNB's cause of action. NCNB's petition and summary judgment motion clearly show that the copies of the notes and guaranties constitute the basis of NCNB's claim. The documents were not denied under oath pursuant to TEX. R.CIV.P. 93(7). The notes and guaranties were, therefore, admissible as fully proved and without necessity of further authentication. *Gonzalez v. Nielson*, 770 S.W.2d 99 (Tex.App.—Corpus Christi 1989, writ den'd); *Reliance Insurance Company v. Dahlstrom Corporation*, 568 S.W.2d 733 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.).

The Clark affidavit is legally sufficient and is competent summary judgment evidence. Hanks' deposition together with the Clark affidavit prove each element of NCNB's action to collect on Hanks' continuing guaranty of payment agreement. Therefore, it is not necessary to address the attacks on the remaining affidavits. The third point of error is overruled.

The judgment of the trial court is affirmed.