11th Court of Appeals
Eastland, Texas
Opinion
 
James D. Harlow
            Appellant
Vs.            No. 11-03-00080-CV – Appeal from Brown County
John Matthew Giles, Sam Treldon Cutbirth, 
Robert Beadel, and Bradley W. Brookshire 

            Appellees
 
            James D. Harlow filed this adverse possession suit against John Matthew Giles, Sam Treldon
Cutbirth, Robert Beadel, and Bradley W. Brookshire. Harlow alleged that he owned 28.64 acres in
Brown County under the terms of a deed and, alternatively, that he had acquired title to the 28.64
acres by adverse possession. After a nonjury trial, the trial court found against Harlow on his
ownership-by-deed and adverse possession claims. Harlow limits his challenge on appeal to the trial
court’s finding on his adverse possession claims. In his sole appellate issue, Harlow argues that the
trial court erred because the evidence was legally and factually insufficient to support the finding that
he had not been in peaceable and adverse possession of any of appellees’ property in the manner or
for the period of time required to establish title by adverse possession. We affirm. 
The Property in Dispute
             In 1961, Harlow and his wife, Dorothy Henry Harlow, purchased a 2,215-acre ranch. In
1972, the Harlows sold the property to Claude R. McClennahan, Jr. R. L. Barnett performed a
survey in connection with the Harlows’ sale to McClennahan. The general warranty deed from the
Harlows to McClennahan described the property as being a 2,213.1-acre tract, “being the same land
as that certain tract of land said to contain 2215 acres, conveyed to [Harlow] et ux by [Henry] et ux.” 
Harlow claims that he discovered a mistake in the property line description in Barnett’s survey after
the sale to McClennahan. Harlow asserts that Barnett performed a second survey showing that the
Harlows owned 28.64 acres that were not included in the sale to McClennahan. These 28.64 acres
are the subject of this suit.
            The 28.64 acres consists of two adjacent tracts of land: one of 18.9 acres and the other of
9.74 acres. Appellees own ranches adjoining the 2,215-acre ranch that the Harlows sold to
McClennahan. Appellees claim that they collectively own the 28.64 acres. Beadel, Cutbirth, and
Giles claim that they each own part of the 18.9-acre tract; Brookshire claims that he owns the 9.74-acre tract. Harlow argues that he obtained title to the 18.9-acre tract by virtue of the 10-year and the
25-year adverse possession statutes and to the 9.74-acre tract by virtue of the 10-year adverse
possession statute. See TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.026 & 16.027 (Vernon
2002). 
Harlow’s Ownership-By-Deed Claim
            A substantial portion of the evidence at trial related to Harlow’s ownership-by-deed claim. 
Larry Hada, a surveyor, testified in support of Harlow’s claim that the Harlows owned 28.64 acres
that were not included in the sale to McClennahan. Harlow also presented other testimony and
introduced deeds and other documents in support of his ownership-by-deed claim. Don King, a
surveyor, testified as an expert witness in support of appellees’ claims that the Harlows sold all of
the property that they owned to McClennahan and that the 28.64 acres were located within the
boundaries of appellees’ properties. Appellees also presented other testimony and introduced deeds
and other documents in support of their ownership claims. 
            Appellees also presented Dale Stobaugh, a forensic document examiner employed by the
Department of Public Safety, as an expert witness. Stobaugh testified that, in his opinion, some of
the documents relied on by Harlow were not authentic. He said that, in his opinion, the documents
could not have been created until years after they were purported to have been prepared. Appellees
presented other testimony that some of the documents relied on by Harlow had been altered. The
trial court found against Harlow on his ownership-by-deed claim and, therefore, determined that the
28.64 acres fell within the appellees’ property boundaries. 
             Harlow’s Adverse Possession Claims
            Harlow’s adverse possession claims to the two tracts are based on independent facts. Harlow
argues that the following evidence regarding the fencing of the 18.9-acre tract satisfied the
requirements of the 10-year and 25-year adverse possession statutes: (1) that Weldon Mahan rebuilt
the fence separating the 2,215-acre ranch from appellees’ property in 1948; (2) that the 18.9-acre
tract was under Harlow’s fence when the Harlows purchased the 2,215-acre ranch in 1961; and (3)
that Harlow completely enclosed the 18.9-acre tract in 1973 after McClennahan declined to purchase
the tract. Harlow also argues that the following evidence demonstrated his adverse possession of
the 18.9-acre tract after completely enclosing it in 1973: (1) that Harlow grazed sheep and horses on
the property in the 1970s and one horse on the property until a year before trial; (2) that Harlow
leased the 18.9-acre tract to Mahan from about 1978 to 1982 and to Robert Lorah from about 1990
to 1995 for hunting purposes; (3) that Lorah and his guests hunted on the 18.9-acre tract; (4) that
Harlow and his brother drilled a water well on the 18.9-acre tract in 1981 or 1982; (5) that Harlow
and his son paid taxes on the 18.9-acre tract; and (6) that Cutbirth, Beadel, and Giles knew that
Harlow claimed ownership of the 18.9-acre tract. 
            Harlow argues that the following evidence established his adverse possession of the 9.74-acre
tract: (1) that Harlow, with the agreement of Brookshire’s predecessor-in-interest, H. R. Stasney,
fenced the 9.74-acre tract with a one wire electric fence in 1973; (2) that, until 1990 or 1991, Harlow
and his hunters went through the 9.74-acre tract to get to the 18.9-acre tract; and (3) that Harlow and 
his son paid taxes on the 9.74-acre tract. 
             Standard of Review
            The standards that apply to a review of jury findings also apply to findings made by the trial
court after a bench trial. Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex.1994); Roach v. Dickenson,
50 S.W.3d 709, 711 (Tex.App. – Eastland 2001, no pet’n). Harlow had the burden of pleading and
proving the elements of his adverse possession claims. Rhodes v. Cahill, 802 S.W.2d 643, 645
(Tex.1990). When a party attacks the legal sufficiency of an adverse finding on an issue on which
it has the burden of proof, the party must demonstrate on appeal that the evidence establishes, as a
matter of law, all vital facts in support of the issue. Dow Chemical Company v. Francis, 46 S.W.3d
237, 241 (Tex.2001); Escalante v. Luckie, 77 S.W.3d 410, 414 (Tex.App. – Eastland 2002, pet’n
den’d). When a party attacks the factual sufficiency of an adverse ruling on an issue on which it has
the burden of proof, the party must demonstrate that the adverse finding is against the great weight
and preponderance of the evidence. Dow Chemical Company v. Francis, supra; Escalante v. Luckie,
supra. Thus, Harlow must demonstrate on appeal either: (1) that he established each element of his
adverse possession claims as a matter of law or (2) that the trial court’s finding as to the failure of
proof of the elements of his claims was against the great weight and preponderance of the evidence.
Williford Energy Company v. Submergible Cable Services, Inc., 895 S.W.2d 379, 383-84 (Tex.App.
– Amarillo 1994, no writ).
            In a bench trial, the trial court, as fact finder, is the sole judge of the credibility of the
witnesses. Munters Corporation v. Swissco-Young Industries, Inc., 100 S.W.3d 292, 296 (Tex.App.
– Houston [1st Dist.] 2002, pet’n dism’d). The trial court may take into account all the surrounding
facts and circumstances in connection with the testimony of each witness and accept or reject all or
any part of that testimony. Munters Corporation v. Swissco-Young Industries, Inc., supra at 297. 
These rules are particularly appropriate in this case. A substantial portion of the testimony involved
witnesses testifying about and pointing to various places on different plats. This testimony was
difficult to follow in the record. Thus, the trial court was in a much better position to evaluate the
evidence. 
Adverse Possession
            Section 16.026(a) provides:
            A person must bring suit not later than 10 years after the day the cause of
action accrues to recover real property held in peaceable and adverse possession by
another who cultivates, uses, or enjoys the property.
 
            Section 16.027 provides:
            A person, regardless of whether the person is or has been under a legal
disability, must bring suit not later than 25 years after the day the cause of action
accrues to recover real property held in peaceable and adverse possession by another
who cultivates, uses, or enjoys the property. 
 
A party seeking to establish title to land by virtue of the statute of limitations has the burden of
proving every fact essential to that claim by a preponderance of the evidence. Rhodes v. Cahill,
supra at 645. The party claiming adverse possession must prove an actual and visible appropriation
of the land for 10 or more consecutive years under the 10-year statute and for 25 or more consecutive
years under the 25-year statute. Rhodes v. Cahill, supra. The use of the land “must constitute an
actual and visible appropriation of the land such that the true owner is given notice of a hostile
claim.” Rhodes v. Cahill, supra (citing Orsborn v. Deep Rock Oil Corp., 267 S.W.2d 781, 785-87
(Tex.1954)). The possession must be “actual, visible, continuous, notorious, distinct, hostile, and
of such character as to indicate unmistakably an assertion of a claim of exclusive ownership in the
occupant.” Terrill v. Tuckness, 985 S.W.2d 97, 107 (Tex.App. – San Antonio 1998, no pet’n)(citing
Rhodes v. Cahill, supra). Sporadic, irregular, and occasional use of land does not satisfy the adverse
possession statutes. Vaughan v. Anderson, 495 S.W.2d 327, 332 (Tex.Civ.App. – Texarkana 1973,
writ ref’d n.r.e.). Exclusive possession of the land is required to support an adverse possession
claim; the adverse possession claimant must wholly exclude the owner from the property. Terrill
v. Tuckness, supra; Kleckner v. McClure, 524 S.W.2d 608, 613 (Tex.Civ.App. – Fort Worth 1975,
no writ). The question of adverse possession normally is a question of fact, so only in rare instances
is a court justified in holding that adverse possession has been established as a matter of law. 
Bywaters v. Gannon, 686 S.W.2d 593, 595 (Tex.1985). 
            Harlow argues that the fencing of the 18.9-acre tract satisfied the requirements of the adverse
possession statutes. The case law distinguishes “casual fences” from those that “designedly enclose”
an area. The law is well settled that the mere grazing of land incidentally enclosed by a fence created
by others cannot support a claim of adverse possession. McDonnold v. Weinacht, 465 S.W.2d 136,
142 (Tex.1971); West Production Co. v. Kahanek, 121 S.W.2d 328, 331 (Tex.1938); Mohnke v.
Greenwood, 915 S.W.2d 585, 593 (Tex.App. – Houston [14th Dist.] 1996, no writ). Where the fence
existed prior to the claimant’s possession of the land and the claimant fails to demonstrate the
purpose for which the fence was erected, the fence is a “casual fence.” Rhodes v. Cahill, supra. 
Repairing or maintaining a casual fence, even for the express purpose of keeping the claimant’s
animals within the enclosed area, generally does not change a casual fence into a designed enclosure. 
Rhodes v. Cahill, supra. 
            In Mohnke, the evidence was undisputed that a barbed wire fence existed at the time the
adverse possession claimants purchased the property. The claimants presented testimony that the
fence had always been used to keep cattle in the property and to delineate the border with the
adjacent property. However, the claimants’ witnesses also testified that they did not remember when
the original fence was erected and that they did not know who had originally constructed the fence. 
The court of appeals upheld the trial court’s finding that there was no evidence as to the purpose of
construction of the original fence. The court of appeals explained that, “[a]lthough these witnesses
testified as to how the fence had been used, no one testified that this was in fact the original purpose
of construction.” Mohnke v. Greenwood, supra at 593-94. (Emphasis in original) Thus, the
claimants’ evidence regarding the use of the property failed to establish that the barbed wire fence
was a designed enclosure.
             In this case, Mahan provided testimony about the history of the fence. He said that he rebuilt
the fence in 1948 or 1949. He stated that the government had used the property during World War
II and that, at that time, the wire had been removed from the old fence. He also said that the
government had left the old fence posts in place. He believed that the fence posts were at least 100
years old. He said that he rebuilt the wire fence along the old fence line, replacing the old fence
posts with new wood fence posts. Mahan did not testify about the purpose of construction of the
original fence. There was no evidence regarding the purpose for which the fence was originally
erected. Harlow failed to establish that the fence was a “designed enclosure.” The fence was a
“casual fence” and did not support Harlow’s adverse possession claim. Rhodes v. Cahill, supra at
646; McDonnold v. Weinacht, supra; Mohnke v. Greenwood, supra at 593-94. 
            The evidence would also support a finding that the 18.9-acre tract was not under fence for
the time period required by the adverse possession statutes. While Harlow claims that he completely
enclosed the 18.9-acre tract in 1973, Cutbirth and Beadel testified that there were gaps in the fence
in 1974. Cutbirth said that he had been grazing sheep and cattle and hunting on his part of the 18.9-acre tract since 1974. Beadel testified that he and his predecessor-in-interest, H. H. Hargrove, had
continually used his part of the 18.9-acre tract since 1974. Beadel said that he had grazed cattle and
hunted on the property. The testimony of Cutbirth and Beadel supports a finding that the 18.9-acre
tract was not under fence in 1974 and the following years.  
            Harlow’s grazing of a few sheep and two horses on the 18.9 acres during the 1970s and one
horse on the property until about a year before trial is insufficient to establish adverse possession. 
Where an adverse possession claimant relies on mere grazing to show adverse use, the claimant must
demonstrate that he “designedly enclosed” the tract at issue. Terrill v. Tuckness, supra at 108. As
stated above, Harlow failed to establish that the 18.9-acre tract was fenced as a “designed enclosure.”
             Additionally, Harlow’s testimony that he had one horse on the property for more than 10
years is insufficient to establish adverse possession for other reasons. First, the grazing of one horse
on the land, standing alone, would not constitute actual and visible use of the property for adverse
possession purposes. Second, there was no evidence that anyone else had ever seen the horse on the
property.
            The leasing of the 18.9-acre tract to Mahan for about four years and to Lorah for about five
years, standing alone, did not constitute an actual and visible appropriation of the property. There
was no evidence that appellees were aware of the leases. Mahan testified that he leased the property
in an effort to keep hunters off of the property. There was no evidence that Mahan ever hunted on
the property. Lorah said that he and his guests hunted on the property two times a month and on
holidays. Lorah’s occasional use of the property for hunting purposes, including the construction
of deer blinds and deer feeders, on its own, was insufficient to establish adverse possession. See
Bramlett v. Harris & Eliza Kempner Fund, 462 S.W.2d 104, 105 (Tex.Civ.App. – Houston [1st
Dist.] 1970, writ ref’d n.r.e.). The evidence also failed to establish that Harlow’s hunters had used
the property for 10 or more consecutive years.
            Harlow’s testimony that he and his brother built a water well on the 18.9-acre tract in 1981
or 1982 is not evidence of adverse possession. Such an isolated instance of use will not support
adverse possession. See Vaughan v. Anderson, supra at 332.
            Harlow testified that he and his son paid the taxes on the 18.9-acre tract. He also introduced
copies of checks and receipts showing payment of taxes for some years. The payment of taxes is
some evidence of adverse possession, but it is insufficient to establish adverse possession as a matter
of law. Rhodes v. Cahill, supra at 645-46; Templeton v. Dreiss, 961 S.W.2d 645, 670 (Tex.App. –
San Antonio 1998, pet’n den’d); Dellana v. Walker, 866 S.W.2d 355, 361 (Tex.App. – Austin 1993,
pet’n den’d). Additionally, the evidence also supports a finding that appellees also paid taxes on the
18.9-acre tract. Cutbirth and Beadel both testified that they had paid the taxes on their respective
parts of the 18.9-acre tract. Beadel said that he was unaware that Harlow had paid any taxes on the
property. There was no evidence that any of the appellees knew that Harlow was paying taxes on
the property. Based on the conflicting evidence, the trial court could have determined that Harlow,
Cutbirth, and Beadel all paid taxes on the disputed acreage. Harlow’s payment of taxes, particularly
under the circumstances of this case, was not a visible appropriation of the property as required by
the adverse possession statutes. 
            Harlow also asserts that Cutbirth, Beadel, and Giles all had notice of his ownership claim. 
Harlow filed a lawsuit in 1977 against Beadel’s predecessor-in-interest, Hargrove, in which Harlow
claimed to own the 18.9 acres. Cutbirth and Beadel both testified that they had knowledge of the
suit. Their knowledge of the suit does not support Harlow’s adverse possession claim. The filing
of the suit was not an actual and visible use of the property. Additionally, the suit was dismissed in
1981 without a resolution of Harlow’s ownership claim. Also, the evidence described above supports
a finding that Cutbirth and Beadel were both using their parts of the 18.9-acre tract during the period
of time that Harlow’s suit was on file.
            The evidence showed that Mardell Bishop, an employee of Giles’s father, had assisted
Hargrove in repairing part of the fence on Giles’s property sometime during the 1990s. Bishop
testified that Gerald Giles told him to put the fence where Harlow said to put it. Harlow asserts that
this evidence demonstrates Giles’s notice of his ownership claim. Bishop’s help in repairing the
fence on Giles’s property in the 1990s, on its own, is insufficient to establish adverse possession. 
Repairing or maintaining a casual fence does not change it into a designed enclosure. Rhodes v.
Cahill, supra at 645. Additionally, the repairing of part of the fence on Giles’s property was not a
use of the 18.9-acre tract.
             The matters relied on by Harlow, standing alone or collectively, were insufficient to establish
adverse possession of the 18.9-acre tract. The evidence did not establish an actual and visible
appropriation of the land for 10 or more consecutive years. Harlow’s adverse possession claim to
the 18.9-acre tract fails for another reason. The evidence did not demonstrate that he had exclusive
possession of the tract for 10 or more consecutive years. As set forth above, Cutbirth and Beadel
testified that they had both used their part of the 18.9-acre tract since 1974. Thus, the evidence did
not demonstrate that Harlow had exclusive possession of the 18.9-acre tract. Therefore, his adverse
possession claim fails for this additional reason. Terrill v. Tuckness, supra at 107.
            Harlow testified that he built the one-wire electric fence in 1973 after Brookshire’s
predecessor-in-interest, Stasney, agreed that the 9.74-acre tract belonged to him. Harlow’s evidence
about the fence, standing alone, does not support his adverse possession claim because a one-wire
electric fence does not constitute possession that is “actual, visible, continuous, notorious, distinct,
hostile, and of such character as to indicate unmistakably an assertion of a claim of exclusive
ownership in the occupant.” See Terrill v. Tuckness, supra at 107.  
            Additionally, appellees presented evidence disputing (1) Stasney’s alleged agreement and (2)
Harlow’s claim that he had built the one-wire electric fence. Appellees introduced three typewritten
letters into evidence: (1) a letter from Harlow’s attorney, J. V. Hammett, to Stasney, dated October
12, 1973; (2) a letter from Stasney to Harlow, dated September 30, 1973; and (3) a letter from
Stasney to Harlow, dated October 20, 1973. Hammett’s letter indicated his understanding that
Stasney had agreed that the 9.74 acres belonged to Harlow. Hammett also stated that:
            I advised Mr. Harlow to build a one wire electric fence along the new survey
line while the survey stakes are still in place. The one wire electric fence will be
adequate to satisfy the requirements of the 16.026 code. 
 
Stasney’s letters to Harlow evidenced Stasney’s agreement that Harlow owned the 9.74-acre tract. 
Stasney also acknowledged that Harlow had built a one-wire electric fence. 
            Appellees assert that these three typewritten letters were created years after they were
purported to have been written and that Harlow created the letters in an effort to bolster his claims. 
The margins of the letters were fully justified. Appellees’ expert, Stobaugh, testified that typewriters
did not have “full justification” technology in 1973 and that “full justification” technology was not
commercially available until 1982. Additionally, Hammett’s letter referenced the “16.026 code.” 
Section 16.026 of the Civil Practice and Remedies Code – the 10-year adverse possession statute
involved in this case – was not enacted until 1985. Appellees also offered the testimony of Eddie
Boone, a neighbor, and King that they had not seen a one-wire electric fence in the area.
            The evidence that Harlow and Lorah went through the 9.74-acre tract to get to the 18.9-acre
tract does not support an adverse possession claim. At most, this use of the 9.74-acre tract was
sporadic or occasional and, therefore, did not satisfy the adverse possession statutes. Vaughan v.
Anderson, supra at 332. 
            Harlow’s payment of the taxes on the 9.74-acre tract, standing alone, was insufficient to
establish adverse possession for the reasons set forth above. See Templeton v. Dreiss, supra at 670. 
            The matters relied on by Harlow, standing alone or collectively, were insufficient to establish
adverse possession of the 9.74-acre tract. The evidence did not establish an actual and visible
appropriation of the land for 10 or more consecutive years. 
            Harlow did not establish adverse possession as a matter of law with respect to either tract. 
Appellees presented evidence contradicting many of the factual matters relied on by Harlow in
urging his adverse possession claims. As such: 
The evidence on adverse possession presented nothing more than an opportunity for
the trial court, as fact finder, to weigh the credibility of the witnesses, draw
inferences and make reasonable deductions from the evidence and to believe or
disbelieve all or part of it. 
 
Templeton v. Dreiss, supra at 670. We find that the evidence was legally and factually sufficient to
support the trial court’s finding that Harlow had not been in peaceable and adverse possession of any
of the appellees’ property in the manner or for the period of time required to establish title by adverse
possession. Harlow’s sole issue is overruled.
This Court’s Ruling
            The judgment of the trial court is affirmed. 
 
                                                                                                TERRY McCALL 
                                                                                                JUSTICE
 
April 1, 2004
Panel consists of: Arnot, C.J., and 
Wright, J., and McCall, J.