[LOCAL LAW.]

## NEWSOM v. PRYOR's Lessee.

Where platts are returned and grants made, without an actual survey, the rule of construction which has been adopted, in order to settle the conflicting claims of different parties, is, that the most material, and most certain *calls* shall control those which are less material and less certain.

A *call* for a natural object, as a river, a known stream, a spring, or even a marked line, shall control both course and distance.

There is no distinction between a *call* to stop at a river, and a *call* to cross a river.

Where a grant was made for 5,000 acres of land, "lying on both sides of the two main forks of Duck river, beginning, &c. and running thence west 894 poles, to a white oak, thence south 894 poles, to a stake *crossing the river*, thence east 894 poles, to a stake, thence north 894 poles to the beginning, crossing the south fork;" it was held, that it must be surveyed so as to extend the second line of the grant such a distance on the course called for as would cross Duck river to the opposite bank.

THIS cause was argued by Mr. *Law*,[a] for the

*a* He cited 1 *Cooke's Tenn. Rep.* 146. 1 *Heyw. Rep.* 253. 2 *Heyw. Rep.* 75. 139. 179. 4 *Wheat. Rep.* 448.

1822.

Newsom
v.
Pryor.

*Feb. 6th.*

1822.

Newsom
v.
Pryor.
Feb. 11th.

plaintiff in error, and by Mr. *White*,[b] for the defendant in error.

Mr. Chief Justice MARSHALL delivered the opinion of the Court.

This is a writ of error to a judgment given in the Circuit Court for the District of West Tennessee, in an ejectment brought by the defendants in error against the present plaintiff. The plaintiffs in the Court below claimed under the elder patent, to the validity of which there was no objection. Of consequence, the only question in the cause was, whether the lines of their grant comprehended the land in contest. The grant was made for 5,000 acres of land, " lying or both sides of the two main forks of Duck river, be ,inning, &c. and running thence west 894 poles, to a white oak tree ; south, 894 poles, to a stake crossing the river ; thence east, 894 poles, to a stake ; thence north, 894 poles, to the beginning, crossing the south fork."

It is apparent that a survey was not made in fact, but that, after marking a beginning corner, the surveyor made out and returned a platt, which he supposed would comprehend the land intended to be acquired. It is now too late to question the validity of grants. made on such platts and certificates of survey. From the extraordinary circumstances of the country, they were frequent, and, in consequence of those circumstances, have received the sanction of

---

b Who cited 5 *Cranch*, 234.   2 *Binney*, 520.   1 *Cooke's Tenn. Rep.* 462.   2 *Tenn. Rep.* 154. 200. 302.   2 *Heyw. Rep.* 237, 238. 258. 253. 496.   1 *Hen. & Munf.* 125.   3 *Call.* 252.

1822.

Newsom
v.
Pryor.

courts. An immense number of titles, believed to be perfectly secure, depend upon the maintenance of such grants. The extent of the mischief which would result from unsettling the principle, cannot be perceived; and is certainly too great now to be encountered. The patent, therefore, must be considered as if the survey had been actually made.

In consequence of returning platts where no actual surveys had been made, and where the country had been very imperfectly explored, the description contained in the patent often varies materially from the actual appearances of the land intended to be acquired. Natural objects are called for in places where they are not to be found; and the same objects are found where the surveyor did not suppose them to be. In a country of a tolerably regular surface, no considerable inconvenience will result from this circumstance. The course and distance of the patent will satisfy the person claiming under it, and seldom interfere with the rights of others. But in a country where we find considerable water courses and mountains there must be more difficulty. The surveyor calls for some known object, but totally miscalculates its courses, distances, or both, from some given point which he has made the beginning of his survey; and there is a variance in the different calls of his survey, and of the patent founded on it. As in this case, the second line is to run south 894 poles, to a stake, crossing the river. This distance will not reach the river; and must be continued to 1,222 poles, to cross the river. The distance must be disregarded, and this line so extended

822.

Newsom
v.
Pryor.

as to cross the river, or the distance must control the call for crossing the river.

These difficulties have occurred frequently, and must be expected to occur frequently where grants are made without an actual survey. Some general rule of construction must be adopted; and that rule must be observed, or the conflicting claims of individuals must remain for ever uncertain.

The courts of Tennessee, and all other courts by whom causes of this description have been decided, have adopted the same principle, and have adhered to it. It is, that the most material and most certain calls shall control those which are less material, and less certain. A call for a natural object, as a river, a known stream, a spring, or even a marked tree, shall control both course and distance. These decisions are founded on two considerations. Generally speaking, it is the particular intention of the purchaser to acquire the land lying on the stream called for, as being more valuable than other land; and, in every case where a natural object is mentioned, it designates the land surveyed had there been an actual survey, much more certainly than course and distance can designate it. In this case, for example, the surveyor says that he has run south $89\frac{1}{4}$ poles, to a stake crossing the river. Now, it is much more probable that he should err in the distance, than in the fact of crossing the river. The conclusion, therefore, had an actual survey been made, would be, that the line did cross the river.

The general effect of this principle undoubtedly is, that the purchaser acquires more land than is ex-

pressed in his grant, and more than he has paid for. Where this has been thought an object worthy of legislative attention, provision has been made for it. Courts cannot now shake a principle so long settled, and so generally acknowledged.

In this case, the counsel for the defendant in the Court below seems to have admitted the rule, but to deny its application to this case. He founds his application to the Court on a supposed distinction between a call to stop at a river, and a call to cross a river. After stating the testimony, "he required the judges to instruct the jury, that if they believed there was no testimony to prove the making of any other corner than the beginning corner, the correct mode of running the said grant would be to go the course and distance from the beginning corner, which would form the termination of the first line, and run from thence the course and distance called for in the second line; and if the course and distance will not reach across the river, that the call in the grant for crossing the river ought to be considered as a mistake in the surveyor, and be rejected; and the second line should terminate at the end of the distance, and from thence run the third line according to the course and distance, and from thence to the beginning. And the said counsel requested the judges to instruct the jury that such call as is in this grant, for a line to pass a river or other object, will be different in principle from what it would be if said call had been for said river, at the termination of the line or boundary; and although, in the latter case the law is, that such natural object shall be the

1822.

Newsom
v.
Pryor.

boundary, disregarding distance, yet, in the present case, the distance shall be the criterion of boundary, disregarding the call for crossing the river."

The judges refused to give this instruction, and charged the jury " that the second line of the said grant must be extended such a distance on the course called for as will cross Duck river to the opposite bank."

To this opinion an exception was taken; and the jury having found a verdict for the plaintiff, in ejectment, the defendant, in the Circuit Court, has brought the cause into this Court by writ of error.

We can perceive no sound reason for the distinction between a call for a river at the end of a line, and for a river in the course of a line. There is as much reason in the one case for supposing the surveyor intended the line should cross the river, or, in case of actual survey, for supposing he did cross the river, as in the other, for supposing an intention to stop at the river, or an actual termination of the line at the river.

Whether the motives for the call were that the acquisition of the land on the river was an object with the purchaser, or that the call for the river conduced more certainly to the designation of the land intended to be acquired, the motives for considering it as the controlling call in the patent, to which distance must be subordinate, seem to be precisely the same whether the call be to cross the river, or to terminate at it.

It has been urged as an objection to the mode of surveying the land directed by the Court, that the

last line will not cross the south fork, and that the land will not be "on both sides of the two main forks of Duck river."

But this objection will not be removed or diminished by the instruction required by the plaintiff in error. Nor can the land be so surveyed as that the last line shall cross the south fork. From the termination of the third line, it is necessary to proceed to the beginning, and the platt shows us that the south fork does not run between the two points. It cannot be brought between them, if at all, without extending the third line an immense distance, and changing the whole figure of the platt, or entirely disregarding the act of Assembly, which directs lands to be taken up by lines running with the cardinal points, except in particular cases, of which this is not one.

Judgment affirmed with costs.