**Arthur COMPTON, Appellant,**

v.

**C. G. THACKER and Kenneth Thacker, Appellees.**

**No. 17675.**

Court of Civil Appeals of Texas, Dallas.

Nov. 12, 1971.

Rehearing Denied Dec. 10, 1971.

Harold F. Curtis, Jr., Greenville, for appellant.

Robert C. Crouch, Morgan, Smith & Crouch, Greenville, for appellees.

GUITTARD, Justice.

This suit between adjoining landowners was tried to a jury and the court granted plaintiffs C. G. Thacker and Kenneth Thacker a permanent injunction restraining defendant Arthur Compton from interfering with the Thackers' use of a roadway over Compton's land. Compton complains here of portions of the charge and also contends that the finding that the road had not been abandoned was contrary to the evidence. We affirm.

The Thackers own 50 acres of land bounded on the south by Compton's 30-acre tract, on the west by another tract owned by Compton containing 130 acres, and on the east by the Sulphur River. The road in question originally ran north along the west line of the 30-acre tract to the south line of the 130 acres, and then east across the 30-acre tract about 300 yards to the southwest corner of the 50 acres. This 300-yard strip is the part now in controversy. The original road continued north and east across the 50 acres and crossed a bridge over the Sulphur River. It connected with public roads at both ends. No evidence was offered concerning the opening of the road or the ownership of the property when it was opened. It was in existence in 1917 or 1918, the earliest time any of the witnesses could remember. In those days it was used by the public going back and forth across the river. By the 1940's the bridge had broken down and in 1948

the county commissioner removed it. After that the road over the 300-yard strip could serve only as access to the 30-acre and 50-acre tracts.

In their petition the Thackers alleged that the road had been dedicated to public use and was a travel-marked and defined road used by plaintiffs' predecessors in title as well as the general public, was maintained by the county for many years and was used by plaintiffs' predecessors in title as a means of ingress and egress to their property, that there was no other road available to reach this property, and that for these reasons they had a vested right in the roadway. Defendant filed a general denial and alleged that if such a roadway ever existed, it had been abandoned for such a length of time that the public had no further easement or right to use it. In answer to special issues the jury found that the area claimed as a roadway was dedicated to public use as a roadway by past owners of surrounding land and that it was not abandoned by the public as a roadway before this suit was filed.

■ Defendant's first complaint concerns Issue No. 1, which inquires whether "the area claimed as a roadway was dedicated, as that term is herein defined, to the public use as a roadway by the various owners of surrounding lands at some time prior to 1968." Defendant objected to the issue because same "did not limit the jury to a consideration of the route, width, course and distance of the alleged roadway as presented by the evidence." He argues that the issue should have limited the jury's consideration to a roadway along the course claimed by plaintiffs. This objection was properly overruled. The evidence was clear that "the area claimed as a roadway" ran along the north line of the 30-acre tract from its west boundary approximately 300 yards to the southwest corner of the 50-acre tract, and that it was approximately 20 feet wide and formerly was bounded by a fence on the south side as well as the north side. Though there was evidence that in later years people going to

and from the 50 acres may have crossed the 30-acre tract by other routes with permission of the owners, there was no indication that any land was "claimed as a roadway" other than the "old lane" or the "old road" along the north boundary of the 30 acres. There is no reason to suppose that the jury was confused in this respect.

■ Defendant also objected that Issue No. 1 "allows the jury to speculate as to past owners' actions when there is no evidence of any action by any past owner." In this connection defendant says that since the evidence shows that for 52 years before the suit the 30-acre tract was owned by Bob Miller, Mrs. Walter Malone and defendant Compton, and there was no evidence of any public use of the road when the land was owned by previous owners, the jury should have been required to determine whether any of the named owners intended to dedicate the area as a roadway. This objection is not well taken, because the evidence indicates that the public use began more than 52 years before. W. S. McWhirter testified that the roadway was in use when he first remembered it in 1917 or 1918. Public use of the roadway must have begun before that time. Though we do not know when the road was opened or who the owners were then, public use of the roadway as far back as the witnesses could remember is itself evidence of earlier dedication. Thus the case falls within the rule that when the origin of the use of a road by the public, and the ownership of the land at that time, are so shrouded in obscurity that no proof can be adduced to show the intention of the owner when the public use began, the law raises a presumption of intention to dedicate the land to public use. O'Connor v. Gragg, 161 Tex. 273, 339 S.W.2d 878 (1960); Owens v. Hockett, 151 Tex. 503, 251 S.W.2d 957 (1952); Dunn v. Deussen, 268 S.W.2d 266 (Tex.Civ.App., Fort Worth 1954, writ ref'd n.r.e.). Consequently, the issue was proper even though there was no direct evidence of the action of any past owner at the time the public use began.

Defendant also complains of the definition of "dedicated" accompanying Issue No. 1, as follows:

" 'DEDICATED' means devoted or appropriated to a public use. The fact of a dedication to public use may be shown by the act of throwing open such property to public use without any other formality, and if individuals, in consequence of such an act or acts, become interested to have it continue so, as by purchasing property. A strip of land may be appropriated to a public use as a road if the surrounding landowners, by action or conduct, or inaction, consent expressly or impliedly to such use and the public has relied upon such action or inaction or conduct."

Defendant contends that no definition was required and that the definition given was an unnecessary explanatory instruction and constituted an improper comment on the weight of the evidence. We think rather that "dedicated" is a legal term requiring definition for the jury. Defendant recognizes that the definition was adapted from opinions of the Supreme Court in O'Connor v. Gragg, supra; Owens v. Hockett, supra; and City of Tyler v. Smith County, 151 Tex. 80, 246 S.W.2d 601 (1952). Though the language is in some respects redundant and ungrammatical, it fairly expresses the legal concept of dedication. Defendant complains that the element of intent is omitted, though this objection was not made in the trial court. However, we think that the word "consent" in the last sentence of the definition necessarily implies intent. The language of the definition is general and does not direct attention to any particular item of evidence. Consequently it cannot be considered a comment on the weight of the evidence.

In his next point defendant complains of the court's definition of "abandoned," as follows:

"A roadway has been abandoned whenever the use for which it was dedi-cated becomes impossible, or so highly improbable as to be practically impossible, or where the object for the use which it was dedicated wholly fails. Mere negative nonuser does not ordinarily constitute abandonment. The elements of common law abandonment of a road by the public are acts of relinquishment and intention to abandon and both elements must be shown by the party asserting the abandonment."

Defendant's objections were that the last two sentences of the definition amount to a comment on the weight of the evidence and that the last clause tends to place undue emphasis on defendant's burden of proof. The first of these objections was properly overruled. As in the definition of "dedicated," the language is general and makes no reference to any particular testimony. Consequently, it cannot be regarded as a comment on the weight of the evidence. We agree, however, that the second objection should have been sustained because the concluding clause, "and both elements must be shown by the party asserting the abandonment," was unnecessary and improper. Having correctly placed the burden of proof in the issue by language usually employed for that purpose, the court need not have given the further instruction that both elements of abandonment must be shown by the party asserting it. Still, in light of the entire charge and the evidence in the case, we do not find that this language was "reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." Tex.R.Civ.P. 434. Defendant does not contend that the definition stated the law incorrectly. Rather, he seems to assume that if the jury is told twice that the burden of proof is on defendant they will require a greater degree of proof to discharge that burden. It is more reasonable to believe that a jury, on being given two similar instructions, will simply recognize the redundancy, unless they misunderstand one or the other, and we cannot assume that they misunderstood.

Consequently, we hold that no harm is shown.

In his last two points defendant contends that the jury's finding in answer to Issue No. 4, that the area claimed as a roadway was not abandoned by the public, was against the overwhelming weight and preponderance of the evidence and has insufficient support in the evidence. Defendant argues that even if the strip in question was originally dedicated to use as a public road, the overwhelming evidence shows that use by the public was abandoned when the bridge fell in and was removed by the county because the use for which the property was dedicated then became impossible or at least so highly improbable that the object of the use to which the property was dedicated wholly failed.

■ This argument assumes that the only purpose of the road was to enable traffic to cross the river. The purpose of a public road, particularly one of local character, is to provide access to property abutting upon it, as well as a thoroughfare between distant points. There is evidence tending to show that after the bridge became impassable, the road still served as a means of access to both the 50-acre and 30-acre tracts. W. S. McWhirter testified that during his tenure as county commissioner he maintained the road to the point where it entered the 50-acre tract and then stopped because he had reached the last landowner. Since the road connected with a public highway on the west, its public character could have continued, even though only one landowner remained at its eastern terminus.

Defendant relies on evidence showing that county maintenance of the road was discontinued many years ago, that fences were put across it as early as 1954, and even before then it was obstructed by timber and mudholes, that anyone who crossed the 30 acres since then had to go through a gate in the fence south of the old road, that Hampton, who owned the 50 acres from 1957 to 1968, put it in the soilbank and seldom visited it, and when he did so he crossed the 30 acres with Compton's permission, using a key which Compton gave him, and that the Thackers knew that the roadway was obstructed by a fence when they bought the 50 acres from Hampton.

■ This evidence may establish lack of use of the road for more than ten years, but it does not show abandonment. Lack of use is not enough. In order for a public road to be considered abandoned, its use for the purpose for which it was dedicated must be either impossible or so improbable as to be practically impossible. Adams v. Rowles, 149 Tex. 52, 228 S.W.2d 849 (1950). Access to abutting land was one of the purposes of the road, and the evidence indicates that its use for that purpose has never been impossible or impracticable, even though the roadway may have been obstructed by fences and timber, since these obstructions could have been removed easily. Neither is abandonment established by discontinuance of county maintenance. Since no formal order of the commissioners' court abandoning the road was shown, discontinuance of county maintenance was evidentiary, at most, of abandonment of the public use. Even the statutory power of the commissioners' court to discontinue a county road by formal order is restricted to abandonment by the county of its maintenance as a public highway and does not include the power to deny its use to the owners of property situated on it. Meyer v. Galveston, H. & S. A. Ry. Co., 50 S.W. 2d 268 (Tex.Com.App., 1932, holding approved); Moore v. Commissioners' Court of McCulloch County, 239 S.W.2d 119 (Tex.Civ.App., Austin 1951, writ ref'd); MacFarlane v. Davis, 147 S.W.2d 528 (Tex.Civ.App., Beaumont 1941, no writ); Commissioners' Court of Harris County v. Kaiser, 23 S.W.2d 840 (Tex.Civ.App., Galveston 1929, writ ref'd).

■ We hold the evidence sufficient to support the jury finding that the 300-yard strip had not been abandoned by the public as a roadway.

Affirmed.