Opinion filed January 6, 2022



## In The

# Eleventh Court of Appeals

_____

### No. 11-20-00041-CV

_____

### JAMES COWAN AND NANCY COWAN, Appellants

### V.

### REX WORRELL AND PAIGE WORRELL-BURRUS, Appellees

**On Appeal from the 266th District Court**

**Erath County, Texas**

**Trial Court Cause No. 34694**

## O P I N I O N

This appeal arises out of a dispute over whether a road that sits on 1.98 acres of land in Erath County is a public road or Appellants' private drive. After a bench trial, the trial court entered a final judgment in Appellees' favor, declaring the road to be public and describing the location of the road by metes and bounds. The trial court also declared that Appellants own no portion of the public road and that the southern boundary of Appellants' property lies immediately to the north of the public

road.  The trial court enjoined Appellants from obstructing access to the road by the general public or abutting landowners and ordered that Appellants take nothing on their counterclaim for adverse possession.  The trial court also entered findings of fact and conclusions of law in support of its final judgment.  We affirm that judgment.

Appellants raise six issues on appeal.  First, Appellants claim that there is legally no evidence or factually insufficient evidence to support the trial court's declaration that the disputed road is a public road.  Second, Appellants claim that there is legally no evidence or factually insufficient evidence to support the trial court's declaration of the metes and bounds description of the road.  Third, Appellants claim that there is legally no evidence or factually insufficient evidence to support the trial court's declaration that Appellants own no portion of the road and that the southern boundary of their property terminates immediately north of the road.  Fourth, Appellants claim that there is no evidence to support the trial court's ruling that the affidavit of heirship offered by Appellants was wholly ineffective to evidence ownership of the 1.98 acres within which the disputed road is situated.  Fifth, Appellants claim that there is legally no evidence or factually insufficient evidence to support the trial court's order that twelve deeds from the purported heirs of E.L. Caraway to Appellants are wholly ineffective to change or alter the legal status or ownership of the disputed road.  Finally, Appellants claim that the trial court erred in declaring that they take nothing on their counterclaim for declaratory judgment because they established, as a matter of law, all vital facts in support of their counterclaim and that the trial court's adverse ruling is against the great weight and preponderance of the evidence.

*Background Facts*

Appellants James and Nancy Cowan came to possess their 106.31-acre tract of property in the Uriah Anderson survey of Erath County through the chain of

2

conveyances set forth below.  The conveyance documents in Appellants' chain of title frequently identify the northern edge of the road as the southern boundary of the property that was eventually conveyed to Appellants.

A. *1941–1945*

On October 13, 1941, L.E. Capell conveyed 70 acres of land within a 160-acre subdivision of the Uriah Anderson survey to M.A. Bramlett, by warranty deed. The deed calls described the property as beginning at the southeast corner of the 160-acre subdivision, on the south line of the Anderson survey, thence northwestward to the east line of the Dublin and Hazeldell road, and so on back to the place of beginning.  Four years later, on November 8, 1945, M.A. Bramlett conveyed the 70-acre tract and an additional 30-acre tract to E.L. Caraway by warranty deed.  The deed purported to convey "that certain 100 acres of land more or less, out of the Uriah Anderson survey."  The deed calls described the property, in two separate tracts, with "70 acres of land more or less, out of the. T.C. Capell 160-acre subdivision of said survey and beginning at the S[outh E]ast C[orner] of said 160 acres in the S[outhern] B[oundary] Line of said Anderson survey," and thence northwestward "to the E[astern] B[oundary] Line of Dublin and Hazeldell road," and so on back to the point of beginning.  The deed describes the "30 acres of land more or less," also as beginning at "the S[outhern] B[oundary] Line of said Anderson survey.

B. *1953–1954*

About eight years later, in April 1953, Caraway conveyed a right of way to the State of Texas, which the deed described as being "on the East side of Highway No. F.M. 1702 as relocated and adopted by the Texas Highway Department," and beginning "on the centerline of the existing road and the said Highway and a county road . . . [t]hence [running southeasterly] along the centerline of a county road . . . with the South line of the Uriah Anderson Survey . . . and the North line of the Sion

3

Blythe Survey." About a year after that, on March 3, 1954, Caraway conveyed to the Veterans Land Board (VLB), by warranty deed, "106.31 acres of land, out of the Uriah Anderson Survey . . . being the same land described as 100 acres more or less in the deed from M.A. Bramlett and wife to E.L. Caraway dated Nov. 8, 1945." The deed purports to describe the property by metes and bounds as beginning "on the East side of F.M. Highway No. 1702, and on the North side of a public road which runs along the south line of said Anderson Survey, for the S[outh] W[est] Corner of [the property]," and so on until reaching "the South line of said Survey and North line of a public road to the place of beginning, and calculated to contain 106.31 acres of land."

C. *1954*

That same year, on February 19, 1954, the VLB entered into a contract for sale of the aforementioned property to Gayland Hall. On October 11, 1990, after receiving the remainder of what was owed under the contract for sale, the VLB conveyed the property to Hall. In the deed, the VLB purported to convey "that 106.31-acre tract situated in the Uriah Anderson Survey . . . described by metes and bounds in the Warranty Deed to the Veterans Land Board dated March 3, 1954 . . . and also further described in that Contract of Sale to [Hall] dated February 19, 1954." The contract for sale of the 106.31 acres from VLB to Hall contained the same metes and bounds description as the deed from Caraway to VLB.

D. *2012 - The Cowan Deed*

On December 18, 2012, following Hall's death, his widow Imogene Hall conveyed to Appellant Nancy Cowan, by warranty deed, "that 106.31-acre tract situated in the Uriah Anderson Survey . . . described by metes and bounds in the Warranty Deed to the Veterans Land Board dated March 3, 1954 . . . and further described in that Contract of sale, dated February 19, 1954," subject to a life estate in Imogene Hall. Appellants did not move onto the property until sometime in 2015.

4

E. *Appellees' Chain of Title*

Appellees Rex Worrell and Paige Worrell-Burrus came to possess their respective tracts of property within the Sion Blythe survey of Erath County through the following chain of events. The White family owned large amounts of land abutting the disputed road since the 1850s, including Appellees' current property, during all of which time the family used the road for ingress and egress from their property. On September 21, 2006, Robert Ligon White conveyed to Appellee Rex Worrell, by warranty deed, 140.41 acres of land in the Sion Blythe survey. The deed describes the boundary of the property toward the northwest corner as running "partly along a fence and an abandoned county road." The deed conveyed the property subject to reservations in favor of preexisting rights of way and easements, including an easement for ingress and egress conveyed by Tom White to Faye Spencer on April 21, 1954. The deed from White to Spencer describes the right of way easement as beginning "in the center of the old road; [t]hence with the center of old road . . . to an old county road; [t]hence with old county road . . . to Farm Road No. 1702." On November 16, 2010, Rex Worrell conveyed some land from the northwest corner of his 140.41-acre tract to his daughter, Paige Worrell-Burrus, describing her tract as beginning "at a capped 3/8 iron rod found at the northwest corner of the said 140.41-acre tract. . . . and in the center of an old county road, for the northwest corner of this tract."

F. *Public and Private Usage*

Long before any of the parties to this suit owned land abutting the disputed road, the White family had been using the disputed road as a means of ingress to and egress from their property. When Rex Worrell first purchased his 140.41-acre tract from Robert White, he used the disputed road as his means of ingress to and egress from his property. He still uses the road on occasion to transport hay to Paige's house when the road between their respective houses is inaccessible. Paige Worrell-

Burrus has used and continues to use the road as her sole reliable means of ingress to and egress from her property. While Rex Worrell has an alternative means of ingress and egress, his property is separated from Paige Worrell-Burrus's by a creek, and the bridge to cross the creek is so low that on most days that road is inaccessible for her, leaving her with no reliable means of ingress and egress other than the disputed road.

### G. *Commissioners Court Resolutions Regarding the Road*

On October 22, 2012, about two months before Imogene Hall conveyed an interest in her property to Appellant Nancy Cowan, the Commissioners Court of Erath County approved and adopted a resolution declaring that the "public road" referred to in the aforementioned instruments "has not been maintained as a county road but has been continued to be used as a public road." The Commissioners Court "formally adopt[ed] said road . . . as Public Road 335." Appellants claim they did not receive notice regarding the proposed resolution, despite attending the first meeting at which the subsequent meeting was scheduled, but they were also not the owners of any affected property at the time. Five months later, on March 25, 2013, the Commissioners Court rescinded the 2012 resolution on the grounds that they believed Appellants were owners of affected property and had not received notice. Neither Appellees nor Caroline McNutt, a nonparty abutting landowner and descendant of the White family, received any notice that the Commissioners Court was considering rescinding its 2012 resolution.

### H. *Appellants' Efforts to Claim the Road*

Appellants contend that, notwithstanding the express language of their deed and the deeds in their chain of title, their property "should have extended further south than . . . described in [their] deed." Appellants claim that from 1954 until 2011, only the Hall family, Appellants, or invited guests used the road. Appellants claim that, during those years, they alone maintained the road. Appellants also claim

that they have been paying taxes on the road, insofar as they pay taxes on their 106.31-acre tract of land and believe that the 1.98 acres within which the road sits are part of their 106.31-acre tract.

On October 6, 2017, Appellants sent a letter to Appellee Paige Worrell-Burrus, advising her that she had thirty days to make alternative arrangements for ingress and egress, after which time Appellants would erect a fence on the south side of the disputed road to obstruct Appellees' access to it. Twenty-five days later, Appellees filed a petition in the 266th District Court, in Erath County, seeking a declaratory judgment that the disputed road is a public road that lies to the south of Appellants' southern border and that Appellants do not own the road. Appellees also requested that Appellants be enjoined from obstructing Appellees' access to the road for ingress to and egress from their property. Following a bench trial, the trial court granted Appellees the relief they sought, and Appellants commenced with this appeal.

*Standard of Review*

When a party challenges both the legal and factual sufficiency of the evidence, appellate courts should decide the no-evidence or legally insufficient evidence issues first. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981) (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 369 (1960)). To analyze a no-evidence or legal sufficiency challenge, we must determine whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We must review the evidence in the light most favorable to the verdict, crediting any favorable evidence if a reasonable factfinder could and disregarding any contrary evidence unless a reasonable factfinder could not. *Id.* at 821–22, 827. "Anything more than a mere scintilla of evidence is legally sufficient to support the finding." *Formosa Plastics Corp. USA v. Presidio Eng'rs &*

7

*Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). More than a scintilla of evidence exists when the evidence would enable reasonable and fair-minded people to reach different conclusions. *Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014). However, "if the evidence is so weak that it only creates a mere surmise or suspicion," then that is legally equivalent to "no evidence." *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014).

To analyze a factual sufficiency challenge, we must consider and weigh *all* of the evidence and determine whether the evidence in support of the finding is so weak as to be clearly wrong and unjust or whether the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex. 1986); *In re King's Estate*, 244 S.W.2d 660 (1951).

We are mindful that the trier of fact, in this case the trial court, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller*, 168 S.W.3d at 819; *Smith v. Hennington*, 249 S.W.3d 600, 603 (Tex. App.—Eastland 2008, pet. denied); *Sw. Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992, writ denied). It is within the trial court's province, as finder of fact, to resolve conflicting evidence. *City of Keller*, 168 S.W.3d at 820. If conflicting evidence can be resolved either way, we must presume the trial court did so in favor of the prevailing party, viz., Appellees. *Id.* at 821. Appellate courts are not factfinders, so we "may not pass upon the witnesses' credibility or substitute [our] judgment for that of the [trial court], even if the evidence would clearly support a different result." *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998) (citing *Pool*, 715 S.W.2d at 634).

8

*Discussion*

*I. The disputed road is a public road. Evidence in the record is legally and factually sufficient to support the trial court's judgment.*

A. *Applicable Law*

Private land may become public by dedication, which is "the act of appropriating private land to the public for any general or public use." *McCulloch v. Brewster Cty.*, 391 S.W.3d 612, 616 (Tex. App.—El Paso 2012, no pet.) (citing *Baker v. Peace*, 172 S.W.3d 82, 87 (Tex. App.—El Paso 2005, pet. denied)). "Dedication occurs when a landowner sets apart his land for public use." *Steel v. Wheeler*, 993 S.W.2d 376, 378 (Tex. App.—Tyler 1999, pet. denied) (citing *Fazzino v. Guido*, 836 S.W.2d 271, 274 (Tex. App.—Houston [1st Dist.] 1992, writ denied); *Ford v. Moren*, 592 S.W.2d 385, 390 (Tex. App.—Texarkana 1979, writ ref'd n.r.e.)). Dedication of a road for public use may be express or, as in this case, implied. *Viscardi v. Pajestka*, 576 S.W.2d 16, 19 (Tex. 1978) (citing *City of Houston v. Scanlan*, 37 S.W.2d 718 (Tex. 1931); *Ramthun v. Halfman*, 58 Tex. 551 (1883)). A property owner impliedly dedicates a road to public use when (1) the landowner's acts induce the belief that she intended to dedicate the road to public use; (2) the landowner is competent; (3) the public relies on the landowner's acts and will be served by the dedication; and (4) there is an offer and acceptance of the dedication. *Lindner v. Hill*, 691 S.W.2d 590, 592 (Tex. 1985) (citing *Las Vegas Pecan & Cattle Co. v. Zavala Cty.*, 682 S.W.2d 254, 256 (Tex. 1984)); *Betts v. Reed*, 165 S.W.3d 862, 868 (Tex. App—Texarkana 2005, no pet.); *Machala v. Weems*, 56 S.W.3d 748, 757 (Tex. App.—Texarkana 2001, no pet.); *Stein v. Killough*, 53 S.W.3d 36, 43 (Tex. App.—San Antonio 2001, no pet.). Whether a public right-of-way has been acquired by dedication is a question of fact. *Lindner*, 691 S.W.2d at 591; *Betts*, 165 S.W.3d at 868.

Typically, intent to dedicate must be manifested by something over and above mere omission, failure to act, or acquiescence by the landowner. *Greenway Parks Home Owners Ass'n v. City of Dallas*, 312 S.W.2d 235, 241 (Tex. 1958); *Betts*, 165 S.W.3d at 868; *Long Island Owner's Ass'n v. Davidson*, 965 S.W.2d 674, 681 (Tex. App.—Corpus Christi–Edinburg 1998, pet. denied); *Gutierrez v. Cty. of Zapata*, 951 S.W.2d 831, 839 (Tex. App.—San Antonio, 1997, no writ). Direct evidence of the landowner's donative intent is not required. *Betts*, 165 S.W.3d at 869; *Supak v. Zboril*, 56 S.W.3d 785, 790 (Tex. App—Houston [14th Dist.] 2001, no pet.). Nor is express acceptance by the public required. *Bowen v. Ingram*, 896 S.W.2d 331, 334 (Tex. App—Amarillo 1995, no pet.) (citing *Viscardi*, 576 S.W.2d at 19).

When the origin of a road cannot be determined, evidence of long and continued use by the public raises a presumption that the landowner intended to dedicate the road. *O'Connor v. Gragg*, 339 S.W.2d 878, 882 (Tex. 1960); *Betts*, 165 S.W.3d at 869; *Supak*, 56 S.W.3d at 790; *Compton v. Thacker*, 474 S.W.2d 570, 572 (Tex. App.—Dallas 1971, writ ref'd n.r.e.); *Dunn v. Deussen*, 268 S.W.2d 266, 269 (Tex. App.—Fort Worth 1954, writ ref'd n.r.e.). This presumption applies when the ownership of the land at the time that the road originated is "shrouded in obscurity," such that no evidence of the intent of the original landowner is available. *O'Connor*, 339 S.W.2d at 882; *Betts*, 165 S.W.3d at 869; *Supak*, 56 S.W.3d at 790; *Compton*, 474 S.W.2d at 572; *Dunn*, 268 S.W.2d at 269. Put differently, "evidence of long and continued use by the public raises a presumption of dedication by the owner when the origin of the public use and the ownership of the land at the time it originated cannot be shown, one way or the other, due to the lapse of time." *Fazzino*, 836 S.W.2d at 274 (citing *Barstow v. State*, 742 S.W.2d 495, 506 (Tex. App.—Austin 1987, writ denied)). This also demonstrates the public's acceptance of the offer of dedication as well as the public benefit component of implied dedication, as these are both implied by the fact of the public's continued use of the road over time.

*Viscardi*, 576 S.W.2d at 19 (citing *City of San Antonio v. Grandview*, 41 S.W. 477 (1897); *Oswald v. Grenet*, 22 Tex. 99 (1858)); *Stein v. Killough*, 53 S.W.3d 36, 42 (Tex. App.—San Antonio 2001, no pet.); *Gutierrez*, 951 S.W.2d at 842 (citing *Moody v. White*, 593 S.W.2d 372, 379 (Tex. App.—Corpus Christi–Edinburg 1979, no writ)).

"Once a road has been dedicated to public use, that road remains subject to that use unless it is abandoned." *Betts*, 165 S.W.3d at 870 (citing *Lindner*, 691 S.W.2d at 592). A county road is statutorily abandoned "when its use has become so infrequent that one or more adjoining property owners have enclosed the road with a fence continuously for at least 20 years." TEX. TRANSP. CODE ANN. § 251.057 (West Supp. 2021). A public road is abandoned under the common law "when the use for which [the] property is dedicated becomes impossible, or so highly improbable as to be practically impossible, or where the object of the use for which the property is dedicated wholly fails." *Betts*, 165 S.W.3d at 871 (citing *Griffith v. Allison*, 96 S.W.2d 74, 77 (Tex. 1936); *Rutledge v. Staner*, 9 S.W.3d 469, 471 (Tex. App.—Tyler 1999, pet. denied)). "The purpose of a public road, particularly one of local character, is to provide access to property abutting upon it, as well as a thoroughfare between distant points." *Id.* (citing *Rutledge*, 9 S.W.3d at 471; *Compton*, 474 S.W.2d at 574). Thus, so long as a public road "is still being used to access property abutting it," the road has not been abandoned under the common law. *Id.* Nor does the State or county's failure to maintain a public road establish common-law abandonment. *Id.* Finally, mere nonuse is also insufficient to constitute abandonment. *Id.*

Generally, commissioners courts have the power to lay out, open, discontinue, or alter any public road. *Smith Cty. v. Thornton*, 726 S.W.2d 2, 3 (Tex. 1986) (citing *Morris v. Cassidy*, 15 S.W. 102, 103 (1890); *Robison v. Whaley Farm Corp.*, 37 S.W.2d 714, 715 (1931)). However, landowners who purchase land abutting a

public road acquire a right to use the road as a means of ingress and egress. *Id.* (citing *Meyer v. Galveston, H. & S.A. Ry. Co.*, 50 S.W.2d 268 (Tex. Comm'n App. 1932, holding approved)). Consequently, a commissioners court does not have the power to close a public road over the protest of an owner of land abutting that public road. *Id.* (citing *Moore v. Comm'rs Court of McCulloch Cty.*, 239 S.W.2d 119 (Tex. App.—Austin 1951, writ ref'd)). A commissioners court may withdraw control and maintenance of such a road but may not close off the means of ingress and egress for abutting landowners. *Id.*

B. *Analysis*

There is significantly more than a scintilla of evidence in the record indicating that the disputed road is, in fact, a public road. The deeds in the record are particularly telling. Appellants' deed, by reference to Gayland Hall's contract with the VLB, describes the southern border of their property as terminating on the north side of the disputed road and specifically refers to that road as a "public road." The deed from Robert White to Rex Worrell described the northwestern corner of his property as abutting "an abandoned county road." The northwestern corner of Rex Worrell's property, which he deeded to his daughter Paige Worrell-Burrus, specifically abuts the disputed road in this case, and that deed described the disputed road abutting her property as "an old county road." The right-of-way deed from Caraway to the State of Texas described the centerline between the Sion Blythe and Uriah Anderson surveys as running "along the centerline of a county road." The easement from Tom White to Faye Spencer described the disputed road as "an old county road" that intersects with F.M. 1702.

A survey map produced by the Texas Department of Transportation's Highway Department, when it was rerouting the Dublin-to-Hazeldell Road to construct the new Farm to Market Road 1702, depicted the disputed road dividing the Sion Blythe Survey and the Uriah Anderson Survey. The disputed road is labeled

12

"Co. Rd." Lowell Wilson, a title insurance professional with eighteen years of experience, testified that the TxDOT map identified the disputed road as a "county road." Wilson also testified that, based on the deeds, maps, and aerial photographs from 1941, 1954, and 1956, the disputed road was previously part of what is now F.M. 1702, which did and still does connect the towns of Dublin and Hazeldell. Indeed, the aerial photographs speak for themselves on this point. A comparison of the aerial photograph from 1941, before F.M. 1702 had been rerouted and when the disputed road was an integral part of the public thoroughfare between Dublin and Hazeldell, with the photos from 1954 and 1956, after F.M. 1702 had been rerouted but while the former route was still intact, and a contemporary Google Earth image, revealing that the former route is discernable but no longer intact, demonstrates that the disputed road in this case is indeed part of what was formerly a public thoroughfare called the old Dublin-to-Hazeldell Road.

Caroline McNutt, a descendant of the White family, which owned property abutting the disputed road for more than a century before Appellants came into possession of their property, testified that her family had always used the disputed road as a means of ingress to and egress from their property. McNutt testified that there was a period of time, during her youth, when the county had posted signs on the disputed road and actively maintained the road. McNutt further testified that her family had always believed the road was actually their property but held it out as a public road, noting that this is the only reason she could determine for why people have approached *her family* to purchase easements over the road throughout the years.

There was also expert testimony from Kenneth Leatherwood, a registered professional land surveyor with twenty-four years of experience. Leatherwood testified that he discovered an old county road "to the northwest of [Appellees'] property . . . along the southern boundary of [Appellants'] property, and on the north

13

line of the White property." Sometime in 2011, Morris Couch, the farm manager of Appellants' property, hired an attorney, William Oxford, to determine the location of the south boundary line of Appellants' property. Oxford advised Couch that Appellants' southern boundary is "the South line of the survey and North line of the public road."

Finally, on October 22, 2012, the Commissioners Court of Erath County declared that the road had been, and still was, a public road. Appellants contend that this resolution is void because they did not receive notice of the hearing at which the Commissioners Court passed the resolution, in violation of Section 281.006 of the Texas Transportation Code. However, Appellants were not owners of any property abutting the disputed road until well after the Commissioners Court passed the resolution, such that Appellants were *not* entitled to notice of the hearing. Notwithstanding that the Commissioners Court rescinded the 2012 resolution, on the erroneous ground that Appellants were entitled to notice, the resolution was not void and thus *does* constitute further evidence that the disputed road was, and still is, a public road.

Appellants complain that there is no evidence in the record that the road was ever dedicated, expressly or impliedly, to public use in the first place. However, Appellants ignore evidence in the record demonstrating a long and continued use of the road by the public, accompanied by uncertainty as to who owns or owned the 1.98 acres of land within which the road sits. The origin of the road, therefore, appears to be "shrouded in obscurity," as described in *Betts*, such that the long and continued use by the public raises a presumption that the road was dedicated to public use. *Betts*, 165 S.W.3d at 869.

In the alternative, Appellants complain that there has been a common law abandonment of the road because, once F.M. 1702 was rerouted, the original purpose of the road, as a connector between Dublin and Hazeldell, has become practically

impossible. The purpose of a local public road, however, is not simply to serve as a thoroughfare between distant points but, crucially, "to provide access to property abutting upon it." *Id.* at 871. When landowners still use a public road to access their property, the road cannot be said to have lost its purpose as a public road. *Id.* Appellants emphasize that they alone maintained the road, but a county's failure to maintain a road does not amount to common-law abandonment. *Id.* Nor does the evidence demonstrate that the road had been statutorily abandoned, since there is no evidence that the road has been fenced off from public use for any amount of time, let alone twenty years. *See* TRANSP. § 251.057.

We hold that there is decidedly more than a scintilla of evidence in the record to support the trial court's finding that the disputed road was, and still is, a public road. The evidence is legally sufficient to support the trial court's finding.

With respect to the factual sufficiency of the evidence, we consider Appellants' competing evidence that the disputed road never was, and currently is not, a public road. Appellants presented witnesses to testify that between 1954 and 2011, Appellants alone maintained the road and did not see anyone else use the road. Lack of maintenance, of course, is neither evidence of abandonment nor evidence that a road is not public. *Betts*, 165 S.W.3d at 871. Nor does mere nonuse constitute abandonment or prove that the road is not public. *Id.* That Appellants lack any recollection of public use of the road between 1954 and 2011 also does not prove that the road was not, in fact, being used by other abutting landowners, like McNutt. Moreover, Appellants' recollections over a period of sixty-five years does not undermine the fact that the disputed road was a public thoroughfare between Dublin and Hazeldell *prior to* Hall's acquisition of the property in 1954. Thus, the trial court's finding that the disputed road is a public road was not so contrary to the great weight and preponderance of the evidence as to be clearly wrong or manifestly

15

unjust. The evidence is factually sufficient to support the trial court's finding. We overrule Appellants' first issue.

*II.    The evidence supports the trial court's metes and bounds description of the public road and the trial court's judgment that Appellants own no part of the public road.*

A. *Applicable Law*

It is a longstanding rule of construction in Texas that "[a]ll parts of a written instrument must be harmonized and given effect[,] if possible," but when conflicts are unavoidable, "the more specific provisions will control over general expressions which are worded as being applicable to the same land." *Stribling v. Millican DPC Partners, LP*, 458 S.W.3d 17, 20 (Tex. 2015) (citing *U.S. Enters., Inc. v. Dauley*, 535 S.W.2d 623, 630–31 (Tex. 1976); *S. Pine Lumber Co. v. Hart*, 340 S.W.2d 775, 779-80 (Tex. 1960); *Sun Oil Co. v. Burns*, 84 S.W.2d 442, 446 (Tex. 1935); *Cullers v. Platt*, 16 S.W. 1003, 1005 (Tex. 1891)). "The call for acreage . . . 'is the least reliable of all calls in a deed.'" *Id.* at 21 (quoting *Tex. Pac. Coal & Oil Co. v. Masterson*, 334 S.W.2d 436, 439 (Tex. 1960)). "When the specific description [by boundaries] is clear, there is no necessity for invoking the aid of the general description [by acreage amount]." *Stribling*, 458 S.W.3d at 20. "Mere inconsistences between the metes and bounds and the general description [acreage] do not themselves render the metes and bounds doubtful." *Id.* at 22.

The United States Supreme Court held, in an opinion authored by Chief Justice John Marshall, that as a rule of deed construction, "the most material and most certain *calls* shall control those which are less material, and less certain," and that "[a] *call* for a natural object . . . shall control both course and distance." *Newsom v. Pryor's Lessee*, 20 U.S. 7, 10 (1822) (emphasis added). The Supreme Court of Texas, in turn, explained that "[o]f all the[] *indicia* of the locality of the true line, . . . course and distance are regarded as the most unreliable. . . . But when [a]

16

surveyor points out . . . rivers, lakes, creeks, marked trees, and lines on the land, for the lines and corners of his land, he has the right to rely upon them as the best evidence of his true boundaries[.]" *Stafford v. King*, 30 Tex. 257, 271–72 (Tex. 1867). Thus, in Texas, "when course and distance, or either of them, conflict with natural *or artificial* objects called for, they must yield to such objects, as being more certain and reliable." *Id.* at 272 (emphasis added). More than one hundred years later, the Texas Supreme Court reaffirmed this principle, declaring that "natural *or artificial* monuments are to be accepted as controlling over calls for course and distance." *Howland v. Hough*, 570 S.W.2d 876, 882 (Tex. 1978) (emphasis added) (citing *Wheeler v. Stanolind Oil & Gas Co.*, 252 S.W.2d 149 (Tex. 1952); *Stafford*, 30 Tex. 257).

### B. *Analysis*

The evidence is legally sufficient to support the trial court's finding as to the location of the public road and its finding that Appellants own no portion of it. Appellants took the property subject to the deed description of the southern boundary line of their property falling on the north line of the public road that intersects with F.M. 1702 and runs along the south line of the Anderson survey.[1] That alone is more than a scintilla of evidence to support the trial court's judgment that the public road is not within Appellants' property. It is also more than a scintilla of evidence to support the trial court's metes and bounds description of the location of the road.

---

[1]The warranty deed accepted by Appellant Nancy Cowan from Hall describes the subject property identifying the survey, abstract number, patent number, and volume in the Erath County records. The deed clearly incorporates by reference the metes and bounds of the preceding deed from the VLB to Hall, which was duly recorded in the deed records of Erath County, Texas. The VLB deed description includes being bordered "on the north side of a public road which runs along the south line of the Anderson survey." Accordingly, Appellants took the property with proper notice of the deed and of the deed's content (including the public road boundary line). *See* TEX. PROP. CODE ANN. § 13.002 (West 2014). Parties to a deed have the opportunity to inspect the deed for mistakes at execution. *Cosgrove v. Cade*, 468 S.W.3d 32, 34 (Tex. 2015).

The evidence is also factually sufficient and the trial court's finding was not so contrary to the great weight and preponderance of the evidence as to be clearly wrong or manifestly unjust. In addition to Appellants' own deed, the expert testimony from Wilson, Leatherwood, Matthew Price, and John Boucher, as well as the advisory letter from Oxford to Appellants, support the trial court's finding.

Wilson testified that if Appellants' southern border is the survey line between the Anderson and Blythe surveys and is also specifically identified in their deed as falling on the north side of the public road, then the public road is not located within the Anderson survey and, therefore, is not located within Appellants' property. Leatherwood testified that the road is not within either party's property because there is a gap between their property lines within which the road is situated. Leatherwood further testified that the road lies within the Anderson survey, but not within Appellants' tract of land since their southern border is uniquely identified to be the north line of the public road.

According to Leatherwood, where a deed call identifies a boundary by reference to a survey line and a natural or artificial monument, the latter controls in the event that the two are inconsistent. Leatherwood's opinion in this matter appears to be a practical application that conforms with the legal declaration of *Howland*. Where calls within a deed conflict, "the more specific provisions will control over general expressions," *Stribling*, 458 S.W.3d at 20, and the "most certain calls shall control those which are . . . less certain." *Newsom*, 20 U.S. at 10. Applying that principle, even if there is an inconsistency in the call from Appellants' deed identifying their southern boundary as both the survey line and the north line of the public road, the north line of the public road controls.

Two expert witnesses testified for Appellants, including Matthew Price, a registered professional land surveyor with ten years of experience, and John Boucher, a real estate attorney with more than fifty years of legal experience. Both

18

experts testified that the VLB appears to have erroneously marked the southern boundary of Appellants' property further north than the survey line and that the metes and bounds description in Appellants' deed thus falls short of the full 106.31 acres purportedly conveyed. Price conceded that he does not know where the survey line actually is, but even if the two experts' suppositions are correct, the call for the north line of the public road still controls over the call for the survey line. *See Stribling*, 458 S.W.3d at 20; *see also Newsom*, 20 U.S. at 10. Moreover, where there is an inconsistency between the listed acreage in a deed and a specific call to an artificial monument like a public road, the latter controls. *Stribling*, 458 S.W.3d at 21 (stating that a "call for acreage . . . is the least reliable of all calls in a deed"). Boucher also testified that the 1.98-acres within which the road sits does *not* belong to Appellants because E.L. Caraway never conveyed that strip of land to the VLB in 1954, and therefore "the heirs . . . [of Caraway] own it." This testimony supports the trial court's declaration that Appellants own no part of the public road.

Finally, Oxford authored an advisory letter to Appellants, six years before this lawsuit was filed, in which he stated that the southern boundary of Appellants' property is the south line of the survey and the north line of the public road. He found that there neither is, nor ever was, a public road on Appellants' property. In fact, Oxford concluded that "there was at some prior time a public road lying along . . . the North line of [*Appellees'*] property" and that this "roadway came out of the Blythe Survey." This testimony is also consistent with the trial court's declaration that Appellants own no part of the public road.

The aforementioned expert testimony, together with Appellants' deed and the law on construction of conflicting calls within a deed, constitute amply sufficient evidence to support the trial court's finding that Appellants own no part of the public road. We hold that this finding was not against the great weight and preponderance of the evidence. Moreover, while there may be uncertainty as to the location of the

19

original survey line, the location of the road itself is not in doubt. The road has been in the same place from at least 1941 to present, fenced in on the north side and partially fenced in from the south. As such, the trial court's metes and bounds description of the public road was not against the great weight and preponderance of the evidence but, rather, was consistent with the great weight and preponderance of evidence presented at trial. We overrule Appellants' second and third issues.

### III. The evidence supports the trial court's rulings as to the affidavit of heirship and the twelve deeds.

#### A. *Applicable Law*

Evidence is relevant if it tends to make a consequential fact either more or less probable than it would be without the evidence. TEX. R. EVID. 401. The deeds Appellants acquired from the purported heirs of E.L. Caraway are relevant only insofar as the grantors were, in fact, the heirs of Caraway and the evidence demonstrated that they owned an interest in the 1.98 acres that Caraway potentially failed to convey to the VLB in 1954. One way to establish the relevance of the twelve quitclaim deeds that Appellants acquired after this lawsuit was commenced is through an affidavit of heirship.

"An affidavit not based on personal knowledge is legally insufficient. *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 666 (Tex. 2010); *see Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008); *see also* TEX. EST. CODE ANN. § 203.002 (West 2020). To have probative value, "an affiant must swear that the facts presented in the affidavit reflect his personal knowledge." *Kerlin*, 274 S.W.3d at 668 (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 224 (Tex. 2004)).

To be admissible, an affidavit of heirship must also have been recorded for a minimum amount of time—five years—before the commencement of a lawsuit regarding title to property. Pursuant to Section 203.001 of the Texas Estates Code:

A court shall receive in a . . . suit involving title to property a statement of facts concerning . . . the identity of the heirs of a decedent as prima facie evidence of the facts contained in the statement if:

> (1) the statement is contained in:
>
> > (A) an affidavit . . . ; and
>
> > (2) the affidavit . . . has been of record for five years or more in the deed records . . . at the time the suit involving title to property is commenced. . . .

EST. § 203.001(a). Indeed, we have held affidavits of heirship to be inadmissible because they were not recorded for five years or more before the suit was instituted. *Compton v. WWV Enters.*, 679 S.W.2d 668, 671 (Tex. App.—Eastland 1984, no writ).

The twelve deeds held to be ineffective by the trial court are quitclaim deeds. What typically distinguishes a deed from a quitclaim deed is that "the granting clause in a deed purports to grant and convey the described property, whereas the granting clause in a quitclaim deed only purports to grant and convey whatever 'right, title, and interest' the grantor has in that property at the time the instrument is executed and delivered." *Jackson v. Wildflower Prod. Co.*, 505 S.W.3d 80, 88–89 (Tex. App.—Amarillo 2016, pet. denied) (citing *Cook v. Smith*, 174 S.W. 1094, 1095 (Tex. 1915); *Geodyne Energy Income Prod. P'ship I-E v. Newton Corp.*, 161 S.W.3d 482, 485 (Tex. 2005); *Enerlex, Inc. v. Amerada Hess*, Inc., 302 S.W.3d 351, 354 (Tex. App.—Eastland 2009, no pet.); *South Plains Switching v. BNSF Ry. Co.*, 255 S.W.3d 690, 707 (Tex. App.—Amarillo 2008, pet. denied)). A quitclaim deed "contains no covenant of seisen or representation of title in the grantor." *Id.* (citing *Diversified, Inc. v. Hall*, 23 S.W.3d 403, 407 (Tex. App.—Houston [1st Dist.] 2000, pet. denied)). A quitclaim deed, on its own, does not establish any title in the grantee; it merely conveys any interest the grantor *may* have. *Id.* (citing *Rogers v. Ricane Enters.*, 884 S.W.2d 763, 769 (Tex. 1994)). "Quitclaim deeds are commonly used

21

to convey 'interests of an unknown extent or claims having a dubious basis.'" *Geodyne*, 161 S.W.3d at 487 (quoting *Porter v. Wilson*, 389 S.W.2d 650, 654–55 (Tex. 1965)).

B. *Analysis*

The evidence was legally and factually sufficient to support the trial court's ruling that the twelve quitclaim deeds are wholly ineffective to alter the legal status of the subject road because they ultimately lacked relevance to the issues that the trial court considered. The twelve quitclaim deeds are only relevant insofar as the grantors actually had a property interest in the 1.98 acres within which the public road sits. As quitclaim deeds, they do not recite that the grantors actually had any ownership interest in that land. They merely purported to convey whatever interest the grantors *might* have had.

Boucher testified that the 1.98 acres constituting the area of the road belongs to the heirs of Caraway. If that were true, the twelve deeds would only be relevant if the grantors actually were shown to be the heirs of Caraway and it was proven that they had not conveyed or previously assigned interest therein to others. The only evidence in the record, therefore, that could plausibly have imbued the twelve deeds with relevance was the affidavit of heirship of John Boucher and Linda Boucher.

The trial court correctly declared, however, that the affidavit was wholly ineffective because the affiants lacked personal knowledge. The affiants swear in the affidavit that their statements are based not on personal familiarity with family and marital history of Caraway and each of his descendants but, rather, on "more than 40 hours of researching the family history of [E.L.] Caraway, . . . examining official public records, and conversing with the descendants of E.L. Caraway." While such efforts may have been expended, an affidavit that is not based on personal knowledge is legally insufficient. *Marks*, 319 S.W.3d at 666. No chain of title for the properties is found in the record, but what is clear and summarily fatal

to Appellants' position is that the affidavit of heirship had not been recorded for five or more years prior to the filing of this suit. An affidavit of heirship is inadmissible and, thus, wholly ineffective if it "ha[s] not been of record for five years or more . . . at the time the suit is instituted." *Compton*, 679 S.W.2d at 671.

Because the affidavit of heirship is inadmissible and wholly ineffective to establish who the heirs of Caraway are or whether those heirs had any property interest in the disputed 1.98 acres allegedly conveyed, the twelve quitclaim deeds were not shown to be relevant. The twelve quitclaim deeds fail to make any consequential fact more or less likely. But even if the heirs of Caraway did own the 1.98 acres, and even if they did in fact convey their property interest in the 1.98 acres to Appellants, it would not make any difference to the legal status of the road or Appellees' entitlement to use it for ingress and egress. This is because the great weight and preponderance of the evidence demonstrates that the disputed road is a public road. Once a road becomes a public road, a subsequent purchase of the land upon which the road sits will not affect its status as a *public* road. *McCulloch*, 391 S.W.3d at 616 (citing *Baker*, 172 S.W.3d at 87). Thus, even if Appellants now own the 1.98 acres within which the public road is situated, they can neither close the road to the public nor use the 1.98 acres in a way that is contrary to the original purpose of the public road as a means of ingress and egress for abutting landowners. *Betts*, 165 S.W.3d at 870.

For all of these reasons, we hold that the record contains more than a scintilla of evidence that the affidavit and quitclaim deeds were wholly ineffective and, therefore, irrelevant. The great weight and preponderance of the evidence supports that conclusion. Because the evidence is both legally and factually sufficient, we overrule Appellants' fourth and fifth issues.

*IV. Appellants take nothing on their counterclaim for declaratory judgment based on adverse possession.*[2]

A. *Standard of Review*

When a party attacks the legal sufficiency of an adverse finding on an issue on which it has the burden of proof, the party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Harlow v. Giles*, 132 S.W.3d 641, 645–46 (Tex. App.—Eastland 2004, pet. denied) (citing *Dow Chem. Co.*, 46 S.W.3d 237, 241 (Tex. 2001); *Escalante v. Luckie*, 77 S.W.3d 410, 414 (Tex. App.—Eastland 2002, pet. denied)). When a party attacks the factual sufficiency of an adverse ruling on an issue on which it has the burden of proof, the party must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Id.* Thus, to prevail, Appellants must demonstrate on appeal either (1) that they established each element of their adverse possession claims as a matter of law or (2) that the trial court's findings as to the failure to prove the elements of adverse possession were against the great weight and preponderance of the evidence. *Id.* (citing *Williford Energy Co. v. Submergible Cable Servs., Inc.*, 895 S.W.2d 379, 383–84 (Tex. App.—Amarillo 1994, no writ)).

---

[2]To the extent that Appellants' sixth issue relates to counterclaims that would merely negate Appellees' claims, we note that a declaratory judgment "is 'not available to settle disputes already pending before a court.'" *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990) (quoting *Heritage Life v. Heritage Grp. Holding*, 751 S.W.2d 229, 235 (Tex. App.—Dallas 1988, writ denied); *John Chezik Buick v. Friendly Chevrolet*, 749 S.W.2d 591, 594 (Tex. App.—Dallas 1988, writ denied)); *see also CareFlite v. Rural Hill Emergency Med. Servs., Inc.*, 418 S.W.3d 132, 142 (Tex. App.—Eastland 2012, no pet.) (reiterating rule that a UDJA counterclaim may not be asserted on an issue already pending before the court). Moreover, with the exception of adverse possession, Appellants did not adequately brief any complaint related to their "counterclaims." An appellate brief "must contain clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(h). Rule 38.1 requires both citation to authority and substantive analysis in regard to an issue, and failure to provide either constitutes a waiver of the issue on appeal. *Alvarez v. State*, No. 11-19-00305-CR, 2021 WL 3923250, at *2 (Tex. App.—Eastland 2021, no pet.) (mem. op., not designated for publication).

B. *Applicable Law*

Appellants claimed title to the 1.98-acre tract pursuant to the provisions of Sections 16.026 and 16.027 of the Civil Practice and Remedies Code, relating to adverse possession. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.026, .027 (West 2002). Under these statutes, a party claiming adverse possession must prove an actual and visible appropriation of land for ten or more consecutive years under Section 16.026(a) or for twenty-five or more consecutive years under Section 16.027. To establish a claim for adverse possession, a claimant must prove (1) actual possession of the disputed property, (2) that is open and notorious, (3) peaceable, (4) under a claim of right, (5) that is consistently and continuously adverse or hostile to the claim of another person for the duration of the relevant statutory period. *Hardaway v. Nixon*, 544 S.W.3d 402, 408 (Tex. App.—San Antonio, 2017, pet. denied) (citing *Estrada v. Cheshire*, 470 S.W.3d 109, 123 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *Glover v. Union Pac. R.R. Co.*, 187 S.W.3d 201, 213 (Tex. App.—Texarkana 2006, pet. denied). Exclusive possession of the land is required to support an adverse possession claim. *Harlow*, 132 S.W.3d at 646 (citing *Terrill v. Tuckness*, 985 S.W.2d 97, 107 (Tex. App.—San Antonio 1998, no pet.); *Kleckner v. McClure*, 524 S.W.2d 608, 613 (Tex. App.—Fort Worth 1975, no writ)).

Title to property belonging to the State or any political subdivision of the State cannot be taken by adverse possession. TEX. CIV. PRAC. & REM. CODE ANN. § 16.061(a) (West 2015). Indeed, "[t]itle cannot be acquired by adverse possession of land belonging to the state, and such possession is not evidence that the land possessed is not the property of the state." *Weatherly v. Jackson*, 71 S.W.2d 259, 264 (Tex. 1934). Additionally, "[a] person may not acquire through adverse possession any right or title to real property dedicated to public use." CIV. PRAC. & REM. § 16.030(b).

25

C. *Analysis*

Appellees filed suit against Appellants seeking a permanent injunction and declaratory judgment that the disputed road is a public road, that Appellants' southern boundary line is north of the public road, and that Appellants own no part of the public road. Appellants filed a counterclaim for declaratory judgment that Appellants are, in fact, the private owners of the disputed road either by deed or by adverse possession.

Appellants' adverse possession counterclaim fails. The evidence does not establish, as a matter of law, all vital facts to find that Appellants took the road by adverse possession. Obviously absent is evidence establishing, as a matter of law, that Appellants had actual and *exclusive* possession of the disputed road. McNutt testified that she and the rest of the White family have been using the road since before Appellants came to possess their property and have continued to use the road since that time. Without exclusivity, Appellants were simply using a shared road as a means of ingress to and egress from their property, same as Appellees. Moreover, the great weight and preponderance of the evidence establishes that the disputed road is, in fact, a public road. That automatically disposes of Appellants' adverse possession claim insofar as one cannot take property from the State or a political subdivision of the State by adverse possession. CIV. PRAC. & REM. § 16.061; *see also Weatherly*, 71 S.W.2d at 264. Nor may a person acquire through adverse possession any right or title to real property dedicated to public use. CIV. PRAC. & REM. § 16.030(b). Thus, the evidence in support of the trial court's adverse finding was neither legally nor factually insufficient. We, therefore, overrule Appellants' sixth issue.

*This Court's Ruling*

We affirm the judgment of the trial court.

W. BRUCE WILLIAMS

JUSTICE

January 6, 2022

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.